IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

XPANSION HOLDINGS, LLC                                                                    PLAINTIFF

V.                                                          CIVIL ACTION NO. 1:16CV125-SA-DAS

THE RETAIL COACH, LLC                                                                    DEFENDANT

MEMORANDUM OPINION

This matter arises from infringement claims under the Lanham Act. Plaintiff Xpansion has filed a Motion to Dismiss for Lack of Personal Jurisdiction, or to Transfer or, alternatively, Stay [23]. Defendants responded, noting the parallel case styled, *The Retail Coach, LLC v. Xpansion Holdings, LLC and r360, LLC*, Civil Action No. 1:16-CV-00032-SA-DAS, wherein Jurisdictional Discovery had occurred. Further, Defendant requested consolidation of the two actions.

*Facts and Procedural History*

In the parallel case, Retail Coach alleges that r360, LLC's marks are infringing on their own marks, and therefore filed a Complaint in the Northern District of Mississippi. Initially, the Complaint was filed against Retail360, LLC and r360, LLC. Retail Coach later realized that Retail360, LLC was the mere preformation name for r360, LLC. Therefore, they amended their complaint to replace Retail360, LLC with Xpansion Holdings, the intended related entity. Retail Coach alleges that Xpansion Holdings is equally responsible for the use of the infringing mark because it is essentially the same entity as r360, or an alter ego.

However, before Retail Coach added Xpansion to the complaint, Xpansion brought this suit against Retail Coach in the Northern District of Alabama for trademark infringement and trademark cancellation, or, in the alternative, a declaration of non-infringement. Upon motion by Retail Coach, this suit was transferred to the Northern District of Mississippi based on the "first

filed rule." Xpansion motioned to dismiss or transfer for lack of personal jurisdiction in both cases, asserting that Mississippi lacks personal jurisdiction. Therefore, as it stands, there are two parallel cases in the Northern District of Mississippi, with similar pending jurisdictional Motions. The first one, originally filed in Mississippi, is styled as *The Retail Coach, LLC v. Xpansion Holdings, LLC and r360, LLC*, Civil Action No. 1:16-CV-00032-SA-DAS. The second case, transferred from Alabama is styled as *Xpansion Holdings, LLC v. The Retail Coach*, Civil Action No. 1:16-CV-00125-SA-DAS.

Xpansion Holdings, doing business as Decision Data Resources, provides web-based Geospatial Information Systems ("GIS") software solutions to economic and workforce development and chamber organizations. Though Xpansion has no day to day operations, it solicits customers by using mass emails to encourage participation in webinars. Xpansion's CEO, Charles Branch, is the sole member, manager and owner of Xpansion. Branch, along with Amanda Beshears and Branch's son are the sole members of r360. Unlike Xpansion, who merely runs the website providing access to the software for both r360 and Xpansion customers, r360 uses one database within that software to do marketing analysis, consulting services, and proactive retail recruitment for public sector clients, who are primarily cities or municipalities.

The two entities share an office space and equipment, and Xpansion has given r360 a substantial "loan" for which payments have never been made. The Retail Coach alleges that this is not a loan, but rather a commingling of funds. Additionally, Xpansion paid for and administered all of r360's start up procedures, including creating the name Retail360, LLC. Xpansion has also provided an unwritten license agreement to r360 to use the r360 mark, and Xpansion does not charge for r360's use of the software or the mark. Finally, the two entities use the same accountant, though they maintain separate banking accounts.

Xpansion alleges that even if there is personal jurisdiction over r360 in Mississippi, as a separate entity, Xpansion has no physical presence in Mississippi, maintains no office or bank accounts in Mississippi, has no property located in Mississippi, and does not directly solicit business in Mississippi. However, since 2003, Xpansion has maintained a renewable contract with the Mississippi Development Authority ("MDA") wherein the MDA pays for access to Xpansion's web-based services. Nevertheless, Xpansion insists that there is no personal jurisdiction because the website is maintained in Birmingham Alabama, and it is situated on a computer located in Andover, Massachusetts. Furthermore, Xpansion alleges that it has not used the r360 mark to market or solicit its services in Mississippi or to Mississippi residents.

Branch, the CEO of both companies, has sent mass emails soliciting business on behalf of r360. The emails contain a copy of the allegedly infringing r360 logo embedded in the signature line of the email, as well as Xpansion's logo. After sending these emails, Branch was able to develop a relationship between r360 and Blackwater Resources in order to explore providing consulting services for the building of a shopping center in Clinton, Mississippi. In further communications with Blackwater Resources, r360, via Branch, used Xpansion's logo in their signature, as well as their own. However, Branch alleges that r360 and Xpansion are entirely separate entities. He argues that he was acting on behalf of r360 only, and not Xpansion.

In response to the pleadings regarding the Motion to Dismiss, Retail Coach filed a Motion for Jurisdictional Discovery in the Mississippi action, which was granted by the Court. Retail Coach also requested consolidation of the two cases.

*Standard*

"The party who seeks to invoke the jurisdiction of the federal court bears the burden of establishing the district court's jurisdiction over the nonresident." *D.J. Investments, Inc. v.*

*Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985). "The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices." *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When determining whether a *prima facie* case for jurisdiction exists, "[t]he district court is not obligated to consult only the assertions in the plaintiff's complaint . . . [r]ather, the district court may consider the contents of the record at the time of the motion . . . ." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). In this regard, all "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Gatte v. Dohm*, 574 F. App'x 327, 330 (5th Cir. 2014) (quoting *D.J. Investments*, 754 F.2d at 546).

## *Analysis*

"Absent a controlling federal statute regarding service of process, [the district court must] first determine whether the long arm statute of the forum state permits exercise of jurisdiction. [The district court] then determine[s] whether such exercise comports with due process." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (citing Fed. R. Civ. P. 4(e); *Aviles v. Kunkle*, 978 F.2d 201 (5th Cir. 1992)). The Lanham Act does not authorize nationwide service of process. *See, e.g., Frosty Bites, Inc. v. Dippin' Dots, Inc.*, 2002 WL 1359704, at *2 n. 4 (N.D. Tex. June 20, 2002) (Kaplan, J.).

"A federal court, even in a federal question case, can use a state long-arm statute only to reach those parties whom a court of the state could also reach under it." *Burstein v. State Bar of Cal.*, 693 F.2d 511, 514 (5th Cir. 1982). The Mississippi long-arm statute allows a court to exercise personal jurisdiction over an out of state defendant who: (1) makes a contract with a

4

resident of this state to be performed in whole or in part by any party in this state; (2) commits a tort in whole or in part in this state against a resident or nonresident of this state; or (3) does any business or performs any character of work or service in this state. MISS. CODE ANN. § 13–3–57 (2000).

*Mississippi's Long Arm Statute*

In the Mississippi action,[1] Retail Coach asserted that Mississippi's long-arm statute reaches Xpansion via the second and third prongs, generally regarded as the tort prong and the "doing business prong." "As it stands now, the long-arm statute, by its plain terms, applies to any person or corporation performing *any character of work* in this state." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012) (quoting *Estate of Jones v. Phillips,* 992 So.2d 1131, 1139 (Miss. 2008) (emphasis added). That broad scope encompasses Xpansion's activities here. Furthermore, the Mississippi Supreme Court has explained that a nonresident may be "doing business" in Mississippi if "he did various acts here for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object." *McDaniel v. Ritter*, 556 So. 2d 303, 309 (Miss. 1989) (citing Restatement (Second) of Conflict of Laws § 35, Comment a (1971)). Retail Coach has alleged that Xpansion placed the infringing logos on the emails in an effort to increase knowledge about r360's services, which would allow Xpansion to realize a pecuniary benefit—interest in its related company. Retail Coach also alleges that r360 used its mark for purposes of soliciting business on behalf of Xpansion from Clinton, Mississippi, targeting Blackwater Resources to provide consulting services for a shopping center.

---

[1] There are two parallel cases in the Northern District of Mississippi with similar pending jurisdictional Motions. *See The Retail Coach, LLC v. Xpansion Holdings, LLC and r360, LLC*, Civil Action No. 1:16-CV-00032-SA-DAS; *Xpansion Holdings, LLC v. The Retail Coach*, Civil Action No. 1:16-CV-00125-SA-DAS. Pursuant to this Order, the cases will henceforth be consolidated.

Additionally, "under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997), *cert. denied,* 522 U.S. 1048, 118 S. Ct. 691, 139 L. Ed. 2d 637 (1998). The Mississippi Supreme Court has stated that "[t]he tort is not complete until the injury occurs, and if the injury occurs in this State, then, under the . . . statute, the tort is committed, at least in part, in this State, and personam jurisdiction of the nonresident tortfeasor is conferred upon the Mississippi court." *Smith v. Temco*, 252 So.2d 212, 216 (Miss. 1971). Accordingly, Retail Coach argues that there is personal jurisdiction under the tort prong of the long-arm statute as the injuries allegedly suffered by Retail Coach occurred in Mississippi.

Under the facts of the case *sub judice,* Xpansion transmitted e-mails to a recipient or recipients in Mississippi, MDA employees. Embedded in the emails were allegedly infringing graphics and signatures. Such signatures were allegedly placed there by Xpansion in order to increase awareness for products distributed by its CEO's other company, r360. Furthermore, Xpansion placed the logo on its website, which was used by customers within Mississippi. The test for infringement is "whether there is a probability that the average person will be so confused by the use of the device complained of as to believe that the products offered by the infringer were produced by the trademark owner,—that there is likelihood that prospective purchasers will be misled to appellant's damage. *Squirrel Brand Co. v. Barnard Nut Co.*, 224 F.2d 840, 844 (5th Cir. 1955) (citations omitted). Even if Xpansion did not consummate continuous transactions in Mississippi on behalf of r360, its repeated use of an infringing logo while doing business in Mississippi on behalf of itself may be in violation of the Lanham Act,

and therefore tortious. The Court is satisfied that the "doing business prong" and the tort prong of the long arm statute reach Xpansion under the prima facie standard.

*Due Process*

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). To comport with due process, the defendant's conduct in connection with the forum state must be such that he 'should reasonably anticipate being haled into court' in the forum state." *Id.*[2]

Regarding the first prong, "whether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the *quality and nature* of the activity with relation to the forum state." *Mississippi Interstate Express Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1006 (5th Cir. 1982) (emphasis added), *see also D.J. Investments, Inc.*, 754 F.2d at 547. "If a nonresident corporate or individual defendant has 'purposefully availed itself of the privilege

---

[2] For purposes of the due process inquiry, there are two types of jurisdiction: general and specific. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008). Specific jurisdiction exists where the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). General jurisdiction exists where the defendant has maintained "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). In the case at bar, Plaintiff's claims arise out of Defendant's use of the logo while conducting activities within the state. Therefore, the Court examines claims under the specific jurisdiction theory.

of conducting activities within the forum state,' then it is considered not 'unfair' that the nonresident's important rights be adjudged in that forum." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) (additional citations omitted)).

Here, there is clear evidence that MDA has used the website repeatedly for the past several years, and the website and its accompanying email addresses have been used to facilitate a renewing contract with Xpansion. Furthermore, Xpansion's website was knowingly and repeatedly used to transfer files to Mississippi residents. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999) (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)[3] (finding that where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper). Not only did Xpansion maintain a contract with MDA for several years, r360's CEO sent emails and negotiated new business opportunities in Mississippi using both the allegedly infringing logo and Xpansion's logo as a means to allow people to know that r360 had substantial experience and a general access to Xpansion software. Xpansion was aware that Retail Coach was competing for the same contracts. Xpansion could have easily left their logo off of the emails in order to avoid doing business in Mississippi. Therefore, the Court finds that the unilateral moves by Xpansion regarding its MDA contract, combined with the marketing to other Mississippi residents, as well as its intentional moves in competing with Retail Coach are sufficient to show purposeful availment, even without determining whether Xpansion is the alter-ego of r360.

---

[3] The Fifth Circuit adopted *Zippo*'s sliding scale in *Mink. Mink,* 190 F.3d at 336. Although *Mink* was a general jurisdiction case, *see id.* ("Because we conclude that Mink has not established any contacts directly related to the cause of action required for specific jurisdiction, we turn to the question of whether general jurisdiction has been established."), and *Zippo* was a specific jurisdiction case, *see Zippo,* 952 F. Supp. at 1127 ("the cause of action arises out of [defendant's] forum-related conduct in this case"), the *Mink* panel found "the reasoning of *Zippo* [to be] persuasive and adopt [ed] it in this Circuit," *Mink,* 190 F.3d at 336. It therefore appears that *Mink*'s sliding scale should be applied in the present specific jurisdiction context.

Turning to the second prong, traditional notions of fair play and substantial justice, the Court notes that Xpansion's burden, though not ideal, would not outweigh this State's interest in administering federally mandated copyright laws or the Retail Coach's interest in convenient and effective relief. Finally, transferring the suits back to Alabama would not satisfy the interests of efficiency in this complicated matter, nor the states' shared interest in furtherance of fundamental social policies. Therefore Retail Coach has established a *prima facie* case for specific personal jurisdiction as to its Lanham Act claims.

*Conclusion*

Plaintiff Xpansion's Motion to Dismiss, Transfer, or Stay is DENIED. In addition, the Court orders this case to be consolidated with *The Retail Coach, LLC v. Xpansion Holdings, LLC and r360, LLC*, Civil Action No. 1:16-CV-00032-SA-DAS, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED, this 3rd day of March, 2017.

                                        /s/ Sharion Aycock
                                        UNITED STATES DISTRICT JUDGE